PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name __SUNDERLAND, DERRECK_____  __E__
     (Last)                    (First)                    (Initial)

Prisoner Number __C-84327__

Institutional Address __P.O. Box 9 Avenal CA 93204__

---

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**Derreck Sunderland**

Full Name of Petitioner

            vs.

**Warden Dawson**

Name of Respondent
(Warden or jailor)

Case No.(To be provided by the clerk of court)

PETITION FOR A WRIT OF HABEAS CORPUS

---

Read Comments Carefully Before Filling In

When and Where to File

     You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

     If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

1

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

## A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.    What sentence are you challenging in this petition?

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

| Superior Court of San Francisco County | San Francisco, CA |
|---|---|
| Court | Location |

(b)  Case number, if known **112153**

(c)  Date and terms of sentence _____ **16 to life**

(d)  Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes **X**, No

| Where? | Avenal State Prison | P.O. Box 9 Avenal CA 93204 |
|---|---|---|
| | (Name of Institution) | (Address) |

2.    For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

**Second-degree murder with use of a weapon PC §187, §12022(b)**

3.    Did you have any of the following?

Arraignment: Yes **x** No __   Preliminary Hearing: Yes **x** No __ Motion to Suppress: Yes __ No **x**

3

4.    How did you plead?

Guilty _____ Not Guilty _____ Nolo Contendere __x__

Any other plea (specify) _____

5.    If you went to trial, what kind of trial did you have?

Jury _____ Judge alone _____ Judge alone on a transcript _____

6.    Did you testify at your trial?  Yes ___ No ___

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment  Yes ___        No ___
(b)    Preliminary hearing          Yes ___.        No ___
(c)    Time of plea  Yes ___        No ___
(d)    Trial   Yes ___    No ___
(e)    Sentencing   Yes ___        No ___
(f)    Appeal      Yes ___        No ___
(g)    Other post-conviction proceeding    Yes ___        No ___

8.    Did you appeal your conviction?   Yes ___ No **X**

(a)    If you did, to what court(s) did you appeal?

| Court of Appeal | Yes __ | No __ | | |
| --- | --- | --- | --- | --- |
| | | | (Year) | (Result) |
| Supreme Court of California | Yes __ | No __ | | |
| | | | (Year) | (Result) |
| Any other court | Yes __ | No __ | | |
| | | | (Year) | (Result) |

(b)    If you appealed, were the grounds the same as those that you are raising in this
petition?                                  Yes __ No __

(c)    Was there an opinion?        Yes _ No _

(d)    Did you seek permission to file a late appeal under Rule 31(a)?
                              Yes _        No _

4

If you did, give the name of the court and the result:

9.    Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes  **x**        No ___

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court    **Superior Court of San Francisco**

Type of Proceeding **Habeas Corpus**    3044

Grounds raised (Be brief but specific):

a.    **Involuntary Plea**

b.    **Ineffective Assistance of Counsel**

c.    

d.    

Result    **Denied; Harmless error** (Exhibit 3, p.1)Date of Result **Nov 8, 1994**

II.    Name of Court    **Superior Court of San Francisco**

Type of Proceeding **Habeas Corpus**    3295

Grounds raised (Be brief but specific):

a.    Involuntary plea

b.    Breach-of -plea

c.    Ineffective assistance of counsel

d.    Abuse of discretion in denial of Motion to withdraw plea

Result Denied (Exhibit 3, p.2-3)    . Date of Result April, 9, 1996

III.    Name of Court    Superior Court of San Francisco

6

Type of Proceeding __Habeas Corpus__ __4194__

Grounds raised (Be brief but specific):

a. ____Breach-of-Plea____

b. ____

c. ____

d. ____

Result __Denied (Exhibit 3, p4-5)__ Date of Result __Feb 5, 2001__

    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __X__ No

(See Next Page)

---

(Name and location of court)

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: __The Board of Parole Hearings' failure to conduct a timely__

subsequent parole hearing has deprived petitioner of the benefits of his plea
bargain in violation if the Fourteenth Amendment of the United States Consttution

Supporting Facts: _____

/ )  On October 26, 1983 , petitioner entered a negotiated plea to second-degree

murder with use of a  weapon.  (Exhibit 1) _____

2 )  On July 9, 2003, the Board denied him parole for three years.  (Exhibit 2 BPT
RT 46:18-24).  (See Attached Statement of Facts)

Claim Two: _____

_____

Supporting Facts: _____

_____

_____

_____

Claim Three: _____

_____

Supporting Facts: _____

_____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which

grounds were not presented and why:

_____

_____

_____

8

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

SANTOBELLO V. NEW YORK (1971) 404 U.S. 257

Do you have an attorney for this petition?    Yes __ Nc **X**

If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on **_10 - 5 - 0 7_**
       Date

Signature of Petitioner

( rev. 5/96)

9

1

2 **Statement of Facts (continued)**

3
THE BOARD OF PAROLE HEARINGS' FAILURE TO
4 CONDUCT A TIMELY SUBSEQUENT PAROLE HEARING HAS
DEPRIVED PETITIONER OF THE BENEFITS OF HIS
5 PLEA BARGAIN IN VIOLATION OF THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION
6

7 1) In July 2006, three years after the three-year denial,

8 the Board did not conduct the subsequent hearing.

9
10 2) In August 2006, petitioner asked his case worker, CCI

11 Messer, about his subsequent hearing. Mr. Messer informed

12 petitioner that his hearing had been indefinitely

13 postponed because of a backlog of hearings. Petitioner

14 then filed a habeas corpus in the Superior Court, Writ

15 No. 5416.

16
17 3) On October 3, 2006, petitioner appeared before

18 Commissioner Harris-Ritter of the Board of Parole

19 Hearings for a subsequent hearing. Commissioner Harris-

20 Ritter postponed the hearing. The reason the commissioner

21 gave for the postponement was the need for a new

22 psychological evaluation. Commissioner Harris-Ritter

23 wrote, "Psyche report is 7 years old and unfavorable.

24 Significant change in inmate behavior since then-

25 positive. (Exhibit 4).
26

27 4) On November 7, 2006, the Superior Court denied the

28 petition. The court recognized petitioner's right to a

(10)

hearing, but claimed that "BPH records indicate that Petitioner had a parole hearing on October 3, 2006. (Exhibit 5 line 18).

5) In January 2007 Commissioner Harris-Ritter resigned and subsequently published an article discussing the Board's backlog of hearings. (Exhibit 6). Specifically, Commissioner Harris-Ritter said," Due Process should not be tossed aside because there is a backlog of hearings" (Exhibit 6, p.3 lines 10-11).

6) On January 7, 2007, petitioner filed his claim in the California Court of Appeals. The claim was denied on March 8, 2007. One day after the Court of Appeals' denial, petitioner filed a timely Petition for Review. The Petition for review was filed on March 19, 2007 (Exhibit 7).

7) According to California Rules of Court 8.512(2), Petitioner has exhausted state remedies.

(11)

1

2 **MEMORANDUM OF POINTS AND AUTHORITIES AND ARGUMENT IN SUPPORT OF CONTENTION**

3

4 THE BOARD OF PAROLE HEARINGS' FAILURE TO CONDUCT A TIMELY SUBSEQUENT PAROLE HEARING HAS
5 DEPRIVED PETITIONER OF THE BENEFITS OF HIS PLEA BARGAIN IN VIOLATION OF THE FOURTEENTH
6 AMENDMENT OF THE UNITED STATES CONSTITUTION

7 Petitioner was induced to waive his rights and enter a
8 plea of no contest with the belief that the California Penal
9
10 Code created a constitutionally protected liberty interest.
11 Petitioner contends that the Board of Parole Hearings'
12 (hereafter Board's) failure to conduct a timely subsequent
13 hearing has deprived him of his liberty interest, and
14 therefore, has deprived him of the benefits of his plea
15 bargain in violation of the Fourteenth Amendment of the United
16 States Constitution. (Santobello v. New York 404 U.S. 257
17 (1971)).

18
19 Petitioner further contends that the Board's failure to
20 conduct a timely hearing pursuant to Cal. Pen. Code
21 § 3041.5(b)(2) is the result of a backlog which is the result
22 of an **illegal** policy to **normally** deny parole at the initial
23 parole consideration hearing in violation of Cal. Pen. Code
24 § 3041(a). Accordingly, the Board's **illegal** policy of **normally**
25 denying parole at the initial parole hearing has deprived
26 petitioner of his liberty interest, and therefore, has
27 deprived him of the benefits of his plea bargain.

28

. (12)

1

2        "Due Process should not be tossed aside because of a

3    backlog of hearings" (Exhibit 6 p.3, lines 10-11; Former

4    Commissioner Harris Ritter). But it was the violation of due

5    process that created the backlog of hearings that is now

6    violating due process.

7        The United States District Court for the Eastern District

8    of California acknowledged that:

9

10        "[U]nder Governors Wilson and Davis, the Board

11        disregarded regulations insuring fair suitability
         hearings and instead operated under a sub rosa

12        policy that all murders be found unsuitable for
         parole." (Coleman v. Board of Prison Terms et, al.,

13        Civ S-96-0783 LKK PAN P. (See Exhibit 8, p. 3, lines
         1-4).

14
         "The unrefuted record shows the no-parole-for-
15        murders policy existed and continued under Governor
         Davis (Coleman v. Board of Prison Terms et, al., Civ
16        S-96-0783 LKK PAN P. (See Exhibit 8, p. 3, lines 1-
         4; Also see Martin v. Marshall 431 f.Supp2d 1038,
17        1048 (2006), citing Coleman v. Board of Prison
         Terms)
18

19        The current statistics under Governor Schwarzenegger

20    (Exhibit 9) provide clear and convincing evidence that the

21    setting of parole dates for murderers is very **abnormal**, to say

22    the least. Petitioner contends that this **abnormal** parole

23    policy is what created the backlog of hearings and thus the

24    Board's failure to conduct petitioner's hearing in a timely

25    manner according to the law.

26

27

28                                    (13)

1

2          In a recent decision by the Santa Clara Superior Court,

3    In re Arthur Criscione No. 71614, the Court conducted

4    discovery and found that:

5

6          "The evidence proves that in a relevant and
           statistically significant period where the Board has
7          considered life term offenses in the context of a
           suitability determination, every such offense has
8          been found to be 'particularly egregious' or
           especially heinous, atrocious or cruel. This
9          evidence completely disregards the detailed
           standards and criteria of § 2402(c)" (Exhibit 9   In
10         re Criscione No. 71614, p. 12).

11
           "...when every single inmate is denied parole
12         because his or her crime qualifies as a § 2402(c),
           exception to the rule that a release date shall
13         **normally** be set, then the exception has clearly
           swallowed the rule and the rule is heing **illegally**
14         interpreted and applied" (Exhibit 9 ; In re
           Criscione No. 71614, p. 14).
15

16         (Emphasis added)

17         Petitioner contends that it is this **illegal** deprivation

18   of his liberty interest that has created the backlog which has

19   deprived him of his right to a timely subsequent parole

20   hearing

21         Petitioner's attorney for the plea negotiations, Mr.

22   Dressler, researched "the law as it relates to the facts of

23   his case" (Exhibit 1, p.3, lines 24-25, RT 32:24-25).The law

24   induced Mr. Dressler to advise petitioner of the consequences

25   of the plea. Mr. Dressler's advice induced petitioner's plea.

26
     Thus, "the law as it relates to the facts of his case"
27
     (Exhibit 1, p.3, lines 24-25, RT 32:24-25) induced
28

1

2 petitioner's plea, and the law sets forth the terms of the plea

3 agreement.

4 The law clearly states, "One year prior to the inmate's

5 minimum eligible parole release date a panel …shall **normally**

6 set a parole release date as provided in Section 3041.5."(Cal

7 Pen Code § 3041(a)).(Emphasis added) In those **abnormal** cases

8 in which a release date is not **normally** set at the minimum

9 eligible parole date, the law clearly states that the board

10 shall hear each case in a timely manner."(Cal Pen Code

11 § 3041.5(b)(2). However, because the board has ignored the

12 clear legislative mandate to **normally** set release dates but

13 instead has practiced, and continues to practice, a "no-

14 parole-for-murderers" policy, (Coleman v. Board of Prison

15 Terms et, al., Civ S-96-0783 LKK PAN P. (See Exhibit 8, p. 3,

16 lines 1-4; Also see Martin v. Marshall 431 f.Supp2d 1038, 1048

17 (2006), citing Coleman v. Board of Prison Terms), petitioner

18 has been deprived of his liberty interest created by "the law

19 as it relates to the facts of his case" (The terms of his plea

20 bargain (Exhibit 1, p.3, lines 24-25, RT 32:24-25)).

21

22

23 Accordingly, petitioner respectfully requests that this

24 issue an Order to Show Cause and grant the writ.

25

26

27

28

(15)

1

2          Previous Petitions (Continued from Page 7 of Form)

3

4    NAME OF COURT San Francisco Superior Court, California Court
                    of Appeals, California Supreme Court

5    TYPE OF HEARING Habeas Corpus Writ No. 5416

6    GROUNDS RAISED Abuse of discretion in Board's denial of
                    parole, Breach of plea from board's
7                   application of the some evidence standard.*

8    RESULT Denied, (See Exhibit 3, p.6-9 for the denial of the
                    abuse-of-desertion claim, and see Exhibit 3
9                   p.10-11 for the Breach-of-plea claim)

10
     *    The breach-of-plea claim based on the Board of Prison
11
     Terms' application of the some evidence standard was filed in
12
     the Federal District Court for the Eastern District of
13   California CV-1-06-00999-LJO-TAG. The claim has not yet been

14   adjudicated. Petitioner has filed a writ of mandate to the

15   Ninth Circuit Court of Appeals (Sunderland v. State of

16   California No. 07-73212) asking for a change of venue to the

17   Federal District Court for the Northern District of California

     where the plea was entered.

18         The claims of the 1996 petition were filed in the Federal

19   District Court for the Northern District of California, CV-98-

20   2580. The petition was initially dismissed as untimely (the

21   time intervals between the state court levels was not tolled.)

     prior to Nino v. Galaza, 189 F.3d 1003. After the decision in
22
     Nino v. Galaza, petitioner resubmitted a copy of the same
23   petition to the Federal District Court for the Northern

24   District of California. The petition was assigned a new

25   number, CV-99-4075 and dismissed as a successive petition,

26   citing CV-98-2580 as the first petition, but it was the same

     petition.
27
           This petition is **not** a successive petition. The
28   complained-of violation in this petition occurred on July 9,

                            (16)

2006 when the Board deprived petitioner of his right to be heard.

PETITIONER HAS EXHAUSTED STATE REMEDIES

On March 19, 2007, petitioner filed a Petition for Review in the California Supreme Court. According to the California Rules of Court, Rule No. 8.512(1)(2):

"The court may order review within 60 days after the last Petition for Review is filed. Before the 60 day period or any extension expires, the court may order one or more extensions to a date not later than 90 days after the last petition is filed" (Cal. Rules of Court 8.512(1)).

"If the court does not rule on the petition within the time allowed by (1), the petition is **deemed** denied." (Cal. Rules of Court 8.512(2)).

(Emphasis added)

Since petitioner filed his petition on March 19, 2007, and since the court has not ruled on the petition, the petition is **deemed** denied. (Cal. Rules of Court 8.512(2)).

(17)

Prayer For Relief

Petitioner respectfully requests that this court grant the
following relief:

1. Issue an Order to Show Cause,

2. Order an Evidentiary Hearing,

3. Declare that petitioner has a vested right to a timely
   subsequent parole hearing pursuant to Cal. Pen Code
   §3041.5(b)(2),

4. Declare that the Board's failure to conduct a timely
   subsequent hearing has deprived petitioner of his
   liberty interest,

5. Vacate the plea and restore petitioner to the status
   quo ante,

6. Appoint Counsel, and

7. grant any and all other relief deemed necessary and
   appropriate.

Dated:  / 0 - 5 - 0 7

Derreck Sunderland
Petitioner Pro Per

VERIFICATION

I, Derreck Sunderland, Petitioner Pro Per, swear under
penalty of perjury that the forgoing claims are true:

1. When I entered the plea bargain, I believed that
   California Penal Code created a liberty interest.

2. I would not have entered the plea if I knew that the
   state would be allowed to suspend my liberty interest
   because of a backlog of subsequent parole hearings.

3. I would not have entered the plea bargain if I knew
   that parole release dates were not normally set.

4. I would not have entered the plea bargain if I knew
   that the state would create an illegal policy of
   normally denying parole.

Dated: _10-5-07_ ____

Derreck Sunderland
Petitioner Pro Per

# EXHIBIT 1

PLEA

1    May I see counsel in chambers?

2    (Short recess.)

3    THE COURT:  May the record show we have reconvened.

4    The defendant is in court with his attorney.

5    Mr. Sweeters, I have looked at the cases you have submitted

6    and I am going to admit this transcription of the tape, so all

7    of the People's evidence is admitted.

8    MR. SWEETERS:  Thank you, your Honor.

9                              (All of the People's Exhibits
                              previously in for identification
10                             were put in evidence.)

11   MR. SWEETERS:  I would ask that the transcript be made a

12   part of the record, then, the certification.

13   THE COURT:  Do you rest?

14   MR. SWEETERS:  The People rest.

15   THE COURT:  Mr. Dressler?

16   MR. DRESSLER:  Your Honor, during the recess I have discussed

17   this matter with Mr. Sunderland, and we have had discussions prior

18   to this time, and Mr. Sunderland is aware I have had discussions

19   with the District Attorney in the Superior Court in this case,

20   also, and before the Court takes this case under submission, at

21   this time I would indicate we have no evidence to offer and we

22   would like to change our plea at this time.

23   THE COURT:  Is this a negotiated plea?

24   MR. DRESSLER:  Yes.

25   THE COURT:  With Judge Campilongo?

26   MR. DRESSLER:  Judge Campilongo is aware of the proposed

27   disposition.

28   THE COURT:  Is that your desire, Mr. Sunderland, to change

1   your plea in this matter?

2       THE DEFENDANT: Yes, your Honor.

3       THE COURT: Do you move at this time to withdraw the present

4   plea of not guilty?

5       MR. DRESSLER: Yes. Before I read the admonition, I would

6   indicate to the Court that Mr. Sunderland is going to enter a

7   plea of no contest to the charge of 187 of the Penal Code in the

8   second degree, and he is going to admit the allegation that a

9   knife was used.

10      THE COURT: Is that right, Mr. Sunderland?

11      THE DEFENDANT: Yes, your Honor.

12      THE COURT: All right. And the District Attorney --

13      MR. SWEETERS: We would stipulate that the degree of the

14   homicide as charged would be of the second degree.

15      THE COURT: And you concurred in those negotiations with

16   Judge Campilongo?

17      MR. SWEETERS: Yes, I did.

18      THE COURT: Very well.

19      MR. DRESSLER: Mr. Sunderland, I am going to make a statement

20   to the Court about your case. It is very important that you

21   listen to it carefully.

22      Your Honor, Derrick Sunderland wants to enter a plea of no

23   contest to the charge of second degree murder, a violation of

24   section 187 of the California Penal Code, as a felony. I have told

25   him that several Constitutional rights will be given up if the

26   Court accepts this plea, including:

27      First, his right to have a preliminary hearing -- well, he has

28   had that, although -- I will do it this way.

1     I have told him he has a right to have a preliminary hearing
2 before a Magistrate to determine if a felony has been committed
3 and if there is probable cause to believe he is the person who
4 committed the offense, and to have his attorney cross-examine
5 witnesses.

6     I have indicated to him that although we have had testimony
7 in regard to the preliminary hearing here, we are giving up our
8 right to have the Court make that determination since we are
9 going to change our plea prior to a holding or no holding in this
10 case.

11     Second, his privilege against self-incrimination; that is,
12 he is under no obligation to say anything that may tend to
13 incriminate him, and I have told him by pleading no contest the
14 Court will make a finding of guilty and he is, in fact,
15 incriminating himself;

16     Third, his right to be tried by a jury; in this regard I have
17 advised him that he cannot be convicted unless all 12 jurors
18 agree that the prosecution has proved his guilt beyond a reason-
19 able doubt;

20     Fourth, his right to see and hear his accusers testify in
21 open court in his presence, and to have his attorney cross-examine
22 them.

23     We have discussed the elements of the charges against him and
24 the possible defenses to those charges, and I have advised him
25 of the law as it relates to the facts of his case.  I have advised
26 him of the legal consequences of a no contest plea to a 187 second
27 degree, and that the punishment for that particular offense is
28 15 years to life in State prison.

1    I have also advised him by admitting the weapon allegation

2    in this case he would receive an additional period of

3    incarceration in the State prison of one year, which would be

4    added on to the 15-year portion of the term, which means he would

5    receive a total sentence of 16 years to life in State prison.

6        I have also told him upon his release from custody he may be

7    placed on parole for a period of three years, and he could be

8    retained under parole supervision or in custody for a period of

9    four years from the date of his initial parole.  However, if

10   parole is revoked, confinement pursuant to a revocation of parole

11   shall not exceed 12 months.

12       This plea if offered as a result of discussions with the

13   District Attorney and Judge Campilongo sitting in Department 22

14   of the San Francisco Superior Court.

15       I might say that I also indicated that the District Attorney

16   as part of this is not charging the prior offense, which

17   Mr. Sunderland is aware of and I am aware of and which the

18   District Attorney is aware of, which occurred in Texas.

19       THE COURT:  Mr. Sweeters, are those representations accurate?

20       MR. SWEETERS:  Yes, your Honor. That adequately and accurately

21   sets forth the negotiations we had in the Superior Court before

22   Judge Campilongo.

23       THE COURT:  Mr. Sunderland, you have heard the statements

24   made to the Court by your counsel, Mr. Dressler, and the statement

25   by the Assistant District Attorney, Mr. Sweeters.  Are they true

26   in all respects?

27       THE DEFENDANT:  Yes, your Honor.

28       THE COURT:  Do you personally give up your privilege not to

1    incriminate yourself?

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  Do you personally give up your right to be tried

4    by a jury?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Do you personally give up your right to see and

7    question the witnesses called against you?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Do you personally give up your right to a

10   preliminary hearing, although we completed the People's part of

11   that preliminary hearing?

12        THE DEFENDANT:  Yes.

13        THE COURT:  Do you realize if you are granted probation and

14   violate any of the terms of that probation you may be sentenced

15   to the State prison without a trial?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Also, if you are not a citizen, you are hereby

18   advised that conviction of the offense for which you have been

19   charged may have the consequences of deportation, exclusion from

20   admission to the United States, or denial of naturalization

21   pursuant to the laws of the United States.  Do you understand

22   that?

23        THE DEFENDANT:  Yes.

24        THE COURT:  The acceptance of your plea at this time is not

25   binding on the Court, and if the Court withdraws its approval

26   at the time for sentencing you will be allowed to take back your

27   guilty plea and enter a plea of not guilty if you wish to do so.

28   Do you understand that?

1    THE DEFENDANT:  Yes.

2    THE COURT:  Derrick Edward Sunderland, what is your plea to

3    violating section 187 of the Penal Code, murder in the second

4    degree, a felony?

5    THE DEFENDANT:  No contest.

6    THE COURT:  Do you admit at this time the use of a deadly

7    weapon, to wit, a knife in this incident?

8    THE DEFENDANT:  Yes.

9    THE COURT:  The Court having heard the preliminary evidence

10   presented by the People at the preliminary hearing finds there

11   is a factual basis for the plea entered by the defendant, and it

12   further finds that the defendant has been informed of his rights,

13   that he has voluntarily and intelligently waived those rights,

14   and he has entered his plea of no contest well knowing the

15   consequences of that plea.

16   Therefore, the plea of no contest will be entered.

17   Now, the Court having heard the evidence presented by the

18   People, do you submit the matter at this time on that evidence?

19   MR. DRESSLER: Yes, your Honor. I will also stipulate that

20   there is a factual basis for the plea.

21   THE COURT:  Very well.  There will be a finding of guilty

22   based on the no contest plea.

23   MR. SWEETERS:  Your Honor, in regard to the date of the

24   certification, I would request that the testimony that was

25   presented here also be certified along with the plea.  I don't

26   know how long it would take to prepare the entire transcript.

27   MR. DRESSLER:  It is my understanding that my client is

28   anxious to have these proceedings resolved forthwith.  I know that

# EXHIBIT 2

46

1   ability to maintain these gains over an

2   extended period of time. Referring to his

3   last 115, which was in April of 2000, having

4   to do with narcotics, which is somewhat of a

5   problem for Mr. Sunderland. In view of the

6   prisoner's lack of program participation,

7   there is no indication that the prisoner would

8   behave differently if paroled at this time.

9   Nevertheless, he should be commended. He's

10  done some positive things in the past, but he

11  hasn't furthered what the Board and the Panel

12  has asked him to do the last time around. He

13  did achieve an AA degree with additional 34

14  units and a three point nine GPL. He has a

15  vocational trade from back in 1993. However,

16  these positive aspects of his behavior don't

17  outweigh the factors of unsuitability at this

18  time. This is another three-year denial,

19  Mr. Sunderland. And in a separate decision,

20  the hearing Panel finds that the prisoner has

21  been convicted of murder and it is not

22  reasonable to expect that parole would be

23  granted at a hearing during the next three

24  years. The specific reasons for our findings

25  were as followed: That the prisoner committed

26  the offense in an especially vicious and brutal

27  DERRIK SUNDERLAND  C-84327  DECISION PAGE 6  7/9/03

# EXHIBIT 3

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE CITY AND COUNTY OF SAN FRANCISCO**

ENDORSED
F I L E D
San Fr... County Superior Court

Department No. 22

MAY 14 1994

ALAN CARLSON, Clerk
Superior Court, San Francisco
By

CITY CLERK

IN THE MATTER OF THE APPLICATION
OF

DERRECK SUNDERLAND,

            Petitioner,

FOR A WRIT OF HABEAS CORPUS

CARLSON, Clerk
BY

Deputy Clerk

WRIT NO. 3044

SUPERIOR COURT NO. 112153

A petition for writ of habeas corpus has been received.

On October 26, 1983, Petitioner pleaded nolo contendere to second degree murder. On January 13, 1984, Petitioner moved to withdraw his plea. The court found Petitioner's plea was knowingly and intelligently made and denied the motion (RT 13:1-3). After again finding Petitioner's plea was knowingly and intelligently made, the Court sentenced Petitioner to 16 years to life on April 6, 1984.

Petitioner complains he is unlawfully detained because (1) while advised he would be on parole for three years, he was not advised of a five year mandatory parole period, and (2) his counsel at the motion to withdraw his plea was ineffective for failing to raise the parole period issue, objecting to having Petitioner's attorney at the time of the plea take the witness stand, and failing to recognize the plea bargain had been broken by the district attorney's failure to return money as promised.

Petitioner did not raise the first contention in his motion to withdraw his plea. Rather, he waited 11 years after his plea to raise the issue. The delay belies the claim that if he had been aware of the parole consequences, he would not have pleaded guilty. See In re Carabes (1983) 144 Cal. App. 3d 927, 933.

As for Petitioner's second claim, he states he has previously raised it via habeas petition before this Court. Petitioner has cited no new facts upon which to grant relief.

For the foregoing reasons, Petitioner's writ of habeas corpus is DENIED.

Dated: November 8, 1994

Judge of the Superior Court

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

F I L E D

San Francisco County Superior Court

Department No. 22

APR 1 0 1996

ALAN CARLSON, Clerk
BY: _____
Deputy Clerk

IN THE MATTER OF THE APPLICATION )
OF )
 )
 )    WRIT NO. 3295
 )
DERRECK SUNDERLAND, )    SUPERIOR COURT NO. 112153
 )
            Petitioner, )
 )
FOR A WRIT OF HABEAS CORPUS )
 )

A petition for writ of habeas corpus has been received.

Petitioner complains he is unlawfully detained because (1) his
nolo contendere plea was involuntarily entered as he was unaware of
the consequence that his sentence for second degree murder with use
of a knife (16 years to life) was actually a mandatory life
sentence.  Further, the court never inquired into whether his plea
was voluntarily entered; (2) he was told he could withdraw his plea
at sentencing; (3) when Petitioner entered his plea, he was heavily
influenced by the likelihood of securing leniency; (4) he was not
advised he would be on parole for five years after his release; (5)
Petitioner did not understand that a no contest plea was the same
as a guilty plea; (6) as part of his plea bargain, Petitioner was
promised that a prior offense would not be charged.  The court and
district attorney violated that promise in a PC 1203.01 statement
referring to a 1980 Texas homicide and recommending that Petitioner
be required to serve a substantial period of confinement; (7) he is
being held longer than what he calculated was his initial parole
date; (8) Petitioner's counsel provided ineffective assistance by
recommending that he accept the plea without advising him of the
consequence of the plea in terms of the maximum time he would spend
in custody; (9) counsel at his motion to withdraw his plea was
ineffective for failing to raise the issue that he was not advised
of the consequences of his plea in terms of parole; (10) when
Petitioner entered his nolo plea, the court failed to determine
whether he understood that his nolo plea was the same as a guilty
plea, and counsel at the motion to withdraw the plea should have
explored this further; and (11) by not allowing Petitioner to
testify to statements his counsel made to him, by not considering
whether he truly understood the consequences of his plea, and by
stating that the court thought the evidence against Petitioner was
strong and that he received an excellent disposition, the court
abused its discretion in denying his motion to withdraw his guilty
plea.

First, when Petitioner entered his plea, he was advised that the sentence was 16 years to life (Exh. I-II, RT 32:23-33:5). The court further found that he had been advised of his rights, voluntarily and intelligently waived those rights, and entered his plea of no contest well knowing the consequences of that plea (Exh. IV, RT 35:9-15).

Second, Petitioner was informed that if at sentencing, the court withdrew its approval of his plea, he would be allowed to take back his guilty plea and enter a not guilty plea (Exh. III RT 34:24-28). Petitioner stated he understood this (Exh. IV RT 35:1). The court afforded Petitioner a hearing on his motion to withdraw his no contest plea and then denied the motion.

Petitioner should have raised his third and fifth claims when his motion to withdraw his plea was heard. Petitioner raised his fourth claim in writ 3044, which this Court denied on November 8, 1994.

As for Petitioner's sixth claim, he was not charged with an enhancement based on his prior Texas homicide.

Seventh, Petitioner's parole date is determined by the Board of Prison terms.

Eighth, Petitioner was advised that his sentence was 16 years to life.

Petitioner's previously raised his ninth claim in writ 3044.

Petitioner raised his tenth claim at his motion to withdraw his guilty plea. The court found his plea was knowingly and intelligently made. As for Petitioner's eleventh claim, he has shown no abuse of discretion.

For the foregoing reason(s), Petitioner's writ of habeas corpus is DENIED.

Dated: April 9, 1996

_____
Judge of the Superior Court

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
THE ANNEXED INSTRUMENT IS FOR THE CITY AND COUNTY OF SAN FRANCISCO
COMPARED WITH AND FOUND TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
ON FILE AND OF RECORD IN MY OFFICE.
ATTEST: CERTIFIED

FEB    6 2001

Department No. 22

**F I L E D**
San Francisco County Superior Court

FEB    5 2001

GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

GORDON PARK-LI, Clerk
County of San Francisco
BY: _____
DEPUTY CLERK

IN THE MATTER OF THE APPLICATION )
OF                                )
                                  )    WRIT NO. 4194
                                  )    SUPERIOR COURT NO. 112153
**DERRECK SUNDERLAND,**           )
                                  )
         Petitioner,              )
                                  )
FOR A WRIT OF **HABEAS CORPUS**   )
                                  )

A petition for writ of habeas corpus has been received.

Petitioner complains he is unlawfully detained because his plea bargain was violated. Petitioner claims that in 1984, he entered a plea of no contest to second degree murder with the use of a weapon after being promised a minimum date of initial parole and a maximum release date of "four years from the date of his initial parole." Petitioner was sentenced to 16 years to life. Petitioner states that counsel informed him in private that with good time credits, he would serve between 8 and 12 years if he took the plea deal. Petitioner states that in 2000, he presented the transcripts of the plea agreement to the Board of Prison Terms. Commissioner Munoz allegedly told Petitioner that the plea bargain is irrelevant and that his sentence is life.

Petitioner claims he has been retained in custody longer than four years past his date of initial parole based on a minimum term of 16 years. He also claims he has been retained longer than four years past his minimum release date of 12 years determined by BPT in 1991.

Petitioner interprets the statement "retained under parole supervision or in custody for a period of four years from the date of his initial parole (Ehx. 1, RT 33:7-9) to "mean that when petitioner reaches his date of initial parole, he will either be retained on parole supervision, or he will be retained in custody for a period of four years from the date of his initial parole."

(Petition at 3:27-4:3).   "If the 'date of initial parole' was in 12 years, then the maximum would be in 16 years.  Four years from the 'date of initial parole.'" (Petition at 4:14-16).

Petitioner's interpretation is incorrect.  He has confused projected release dates with actual release on parole.

Further, it should be noted that Petitioner states that he has raised these claims before this Court, the Court of Appeal, and the California Supreme Court.  Renewing this writ before this Court is not Petitioner's remedy.

For the foregoing reasons, Petitioner's writ of habeas corpus is DENIED.

Dated:  2/5/01

Judge of the Superior Court

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE CITY AND COUNTY OF SAN FRANCISCO**

Department No. 22

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) ) ) **WRIT NO. 4939** |
| **DERRECK SUNDERLAND** | ) ) ENDORSED |
| | ) F I L E D |
| | ) San Francisco County Superior Court |
| Petitioner, | ) |
| | ) DEC - 1 2004 |
| **FOR A WRIT OF HABEAS CORPUS** | ) GORDON PARK-LI, Clerk |
| | ) BY: _____ CARLOS BARRAZA |
| | Deputy Clerk |

A petition for a writ of habeas corpus has been received.

Since 1983, Petitioner has been serving a sentence of sixteen years to life for second-degree murder. The Board of Prison Terms ["Board"] in July of 2003 found Petitioner unsuitable for parole, as it had on five other occasions. In its administrative appeal decision, the Board refused to disturb the unsuitability determination.

Petitioner contends that the Board's decision was arbitrary, not supported by any evidence, and contrary to statute, thus depriving him of his due process rights. Specifically, Petitioner contends that the Board lacked evidence to support its belief that the offense was committed in a dispassionate and calculated manner, that the offense was committed in an exceptionally callous manner, and that Petitioner's motive for the offense was inexplicable and trivial.

The factors showing parole unsuitability are that the inmate: 1) committed the offense in an especially

heinous, atrocious, or cruel manner,[1] 2) possesses a
previous record of violence, 3) has an unstable social
history, 4) previously has sexually assaulted another
individual in a sadistic manner, 5) has a lengthy
history of severe mental problems related to the
offense, and 6) has engaged in serious misconduct while
in prison.   (§ 2402(c).)

Due process of law requires only that some evidence
relevant to the enumerated factors support the Board's
decision.  (Rosenkrantz, supra, 29 Cal.4th at 676-77.)
It is irrelevant that a court might reach a different
conclusion on the evidence.  (Id. at 677.)

## 1. SOME EVIDENCE EXISTS TO SUPPORT THE BOARD'S DECISION

The Board stated that Petitioner is not suitable
for parole because he would pose an unreasonable risk
of danger to society, a conclusion based on the
circumstances of his commitment offense.

Specifically, the Board stated that the offense was
carried out in a manner that demonstrates an
exceptionally callous disregard for human suffering,
that the motive of the crime was inexplicable and
trivial in relation to the offense, and that the
offense was carried out in a dispassionate and
calculated manner.

The facts of Petitioner's crime are as follows.
Petitioner, who was a homeless person at the time of
the crime, accepted Gordon Fortney's offer of lodging
and dinner.  Fortney made "sexual advances" toward

---

[1]This might include circumstances where: 1) multiple victims were
attacked in the same or separate incidents, 2) the offense was
carried out in a dispassionate and calculated manner (i.e. an
execution-style murder; 3) the victim was abused, defiled, or
mutilated; 4) the inmate demonstrated an exceptionally callous
disregard for human suffering; and 5) the motive is inexplicable
or very trivial in relation to the offense.  (§ 2402(c)(1).)

Petitioner, which were rebuffed.  Some time later, when Fortney tried to stop Petitioner from taking his (Fortney's) wallet, Petitioner stabbed him 25 times, thus causing his death.

Although Petitioner contends that the killing was the result of a sudden quarrel, the high number of stabbings undercuts the idea that the killing was defensive or provoked.  Rather, the high number of stabbings would provide the Board with some evidence that Petitioner demonstrated an exceptionally callous disregard for suffering.  The fact that the numerous stabbings were delivered in order to fend off the victim's attempt at preventing the theft of his wallet would also provide the Board with some evidence that the motive for the crime was inexplicable and trivial. Additionally, such a high number of stabbings would provide the Board with some evidence that the offense was carried out in a dispassionate and calculated manner.

## 2. THE BOARD CONSIDERED OTHER FACTORS

There is no evidence that the Board acted arbitrarily and capriciously, or otherwise failed to consider all the relevant factors.  Although the Board ultimately decided to deny parole, the hearing transcript shows that it only did so after considering numerous factors, which are listed next.

The Board stated that Petitioner has a record of violent and assaultive behavior, including a conviction for manslaughter.  Petitioner, the Board noted, has a history of unstable and tumultuous relationships with others and a problem with drug use from the age of 14 or 15.  The Board thought that Petitioner had failed to profit from previous corrective and rehabilitative efforts, including probation, parole, county jail time, juvenile camp, a Youth Authority commitment, and a prior prison term.

Petitioner has adult convictions for the possession, sale and transportation of marijuana, battery, disorderly conduct, petty theft, receiving stolen property, and others.

The Board thought that Petitioner has not sufficiently participated in self-help programs while in prison. For example, Petitioner failed to attend mandatory meetings of Alcoholics or Narcotics Anonymous. Psychological reports indicate that Petitioner's potential to commit violence is higher than that of the average citizen. Petitioner, according to the Board, lacks realistic parole plans and acceptable employment plans.

The court finds no reason to disturb the Board's determination.

The petition is denied.

Dated: November 24, 2004

Judge of the Superior Court

ENDORSED
San Francisco County Superior Court
F I L E D
MAR 1 0 2005
GORDON PARK-LI, Clerk
CARLOS BARRAZA
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE CITY AND COUNTY OF SAN FRANCISCO**

Department No. 22

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION ) | |
| OF ) | **WRIT NO. 5031** |
| ) | |
| **DERRECK SUNDERLAND** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| **FOR A WRIT OF HABEAS CORPUS** ) | |
| ) | |

A petition for a writ of habeas corpus has been received.

The court denied Petitioner's previous petition in December 2004. Petitioner now asks why the court did not rule on his claim that the Board of Prison Term's refusal to grant parole deprived him of the benefits of the plea bargain.

The court's order disposed of all Petitioner's contentions, either directly or by implication. The court did not directly address the particular contention Petitioner now asks about because other adverse determinations made a ruling on this issue unnecessary.

Denial of relief on habeas corpus cannot be appealed. In re Crow (1971) 4 Cal.3d 613, 621 FN 8. If the superior court rules adversely on an issue presented by a petition, an original petition for a writ of habeas corpus must in filed in the court of appeal.

The petition is denied.

Dated: 3-1-05

Judge of the Superior Court

# EXHIBIT 4

# BOARD OF PRISON TERMS STATE OF CALIFORNIA
## LIFE PRISONER HEARING DECISION FACE SHEET

[ ] PAROLE GRANTED- (YES)
    CDC: Do not release prisoner before
        Governor's review.

[ ] PAROLE DENIED- (NO)

| **Records Use Only** | | |
| --- | --- | --- |
| Parole Release Date | | |
| YR | MO | DAY |

Attach Prison Calculation Sheet

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR: _____ YEAR(S)
[X] HEARING POSTPONED/REASON: _psych report is 7 years old and_
_infavorable. significant change in inmate Mason since then._ _positiv_

## PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**

[ ] No more 115's or 128A's    [ ] Stay discipline free    [ ] Earn positive chronos
[ ] Work to reduce custody level    [ ] Learn a trade*    [ ] Get a GED*
[ ] Get self-help*    [ ] Get therapy*

[ ] Recommend transfer to _____
[X] Other _new psyche ordered postpone to mo or 1st calendar after_ _psyche is_ _comple_
* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

**Penal Code 3042 Notices**    [X] Sent    Date: 9-16-05

Commitment Offense(s)

| P187, P12022(B) | MURDER 2ND |
| --- | --- |
| Code(s) | Crime(s) |
| 112153 | 1 |
| Case #(s) | Count #(s) |

| Date Inmate Came to CDC | Date Life Term Began | Minimum Eligible Parole Date |
| --- | --- | --- |
| 04-17-84 | 04-17-84 | 12-24-92 |
| [ ] Initial Hearing | [X] Subsequent (Hearing No.) 6 | Date of Last Hearing 06-04-03 |

| CDC Representative | | |
| --- | --- | --- |
| Attorney for Prisoner  JARED EISENSTAT | Address | |
| D.A. Representative | County | SAN FRANCISCO |

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not become final until it is reviewed.

Chair _Brenda Harris-Ritter_    Date _10/3/06_
Panel Member _____    Date
Panel Member _____    Date

| NAME | CDC# | PRISON | CALENDAR | DATE |
| --- | --- | --- | --- | --- |
| SUNDERLAND, DERRICK | C-84327 | ASP | 07-06 | 10-03-06 |

**BPT 1001** (REV. 08/03)

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| SUNDERLAND, DERRICK | C-84327 |

| DATE OF HEARING | LOCATION |
|---|---|
| 10-03-06 | AVENAL STATE PRISON |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 04-17-84 | 04-17-84 | SAN FRANCISCO |

| OFFENSE | CASE NUMBER |
|---|---|
| MURDER 2ND | 112153 |

| COUNT NUMBER (S) | PENAL CODE SECTION (S) VIOLATED |
|---|---|
| 1 | P187, P12022(B) |

| TERMS | MEPD |
|---|---|
| 16-LIFE | 12-24-92 |

## OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| RITTER-HARRIS | PEREZ | |

OTHERS PRESENT

☒ PRISONER (IF ABSENT, WHY?) _____ SUNDERLAND, DERRICK _____

☒ ATTORNEY   MARCIA HURST   N/A

☒ DEPUTY D.A.   UNDERWOOD   COUNTY OF _____ SAN FRANCISCO

☐ OTHERS _____

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____, PAGES _____ THROUGH _____

☐ THE STATEMENT OF FACT IS

   ☐ QUOTED FROM THE BOARD REPORT, DATED _____, PAGE(S) _____

   ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

   ☐ QUOTED FROM THE COURT OPINION PAGE(S) _____

BPT 1000 (Rev. 8/90)

# EXHIBIT 5

1

2

3

4

5

6

7

8

9

ENDORSED
F I L E D
*San Francisco County Superior Court*

NOV 0 7 2006

GORDON PARK-LI, Clerk
BY: _____ ANGEVIC AGDEPPA _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE CITY AND COUNTY OF SAN FRANCISCO

10

Department No. 22

11

12

13

14

15

16

IN THE MATTER OF THE APPLICATION )
OF                               )
                                 )
                                 )  WRIT NO. 5416
                                 )
           DERRECK SUNDERLAND    )
                                 )  ORDER
                                 )
Petitioner,                      )
                                 )
FOR A WRIT OF HABEAS CORPUS      )
                                 )
_____ )

17

18

A writ of habeas corpus has been received.

19

20

Petitioner contends that the Board of Parole Hearings (BPH) failed to conduct a timely subsequent parole hearing and, in doing so, deprived petitioner of the benefits of his plea bargain, in violation of his due process rights.

21

22

23

Petitioner's claim regarding his plea agreement has already been raised. The court disposed of Petitioner's contention, either directly or by implication, in the following writs: No. 3044, No. 3295, No. 4194, No. 4939, and No. 5031.

24

25

Denial of relief on habeas corpus cannot be appealed. In re Crow (1971) 4 Cal.3d 613, 621 FN 8. If the Superior Court rules adversely on an issue presented by a petition, another original

1    petition for a writ of habeas corpus must be filed in the court of appeal.

2

3    On July 9, 2003, BPH denied Petitioner parole for the fifth time. BPH deferred petitioner's next hearing for three years. The petition states that Petitioner's caseworker informed him that his

4    next parole hearing was indefinitely postponed because of a backlog of subsequent parole hearings.

5

6    Petitioner is entitled to be considered for parole. In re Rosenkrantz (2000) 80 Cal.App.4th 409,423.    That right was not

7    violated as BPH records indicate that Petitioner had a parole hearing on October 3, 2006.

8

9    For the foregoing reasons, Petitioner's writ of habeas corpus is DENIED.

10

11    Nov 2, 2001

12    Date                                    Judge of the Superior Court

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 6

**BPH Letter: Harris-Ritter**

# PAROLE BOARD POLITICS AND DEEP-SEEDED PROBLEMS

## DETAILED BY FORMER BPH COMMISSIONER

On June 5th, former BPH Commissioner Belinda Harris-Ritter wrote a detailed 5-page letter to the Senate Rules Committee, and "To Whom it May Concern," to enlighten interested parties on some of the serious problems at the heard of the Board's ineptitude. Ms. Ritter-Harris, who resigned six months earlier in January, 2007, after chairing lifer suitability hearings for six months, graciously gave her permission to publish her exposé in full:

### DO NOT BLAME THE COMMISSIONERS FOR PAROLE BOARD PROBLEMS

Last July I began my term as a Commissioner on the Board of Parole Hearings, an appointee of Governor Schwarzenegger. I was naive in thinking that the Board would be allowed to do its job. I left the Board in January of this year frustrated by the inability of the Board to function, exhausted from the out of control travel schedule and still weak from the flu and norovirus picked up in prison facilities crawling with disease. I left, not because I had given up, but because I received a telephone call from Alberto Roldan, a deputy appointment's secretary, in which he told me I was being given the opportunity to resign because the Governor wanted to go in another direction and appoint someone else in my place. I was told that I was forbidden to tell anyone of the call, forbidden to attend the upcoming Board meeting and if I did not do what I was told, I would be terminated. I asked what I had done to cause this to occur and was told I had done nothing wrong. I knew that if the Governor wanted to put someone new on the Board there was an open seat so clearly I was considered a problem. There was no opposition to me on record and I was often told by victim advocates/relatives and inmate counsel alike that I did an excellent job. I had been unaware that there was opposition to me from the people responsible for my being there in the first place. I am not the only Commissioner to have met that fate. Recently, another excellent Commissioner was confirmed by the Senate but only after an attack on her by people in the Governor's office, the District Attorney's Association and spearheaded by Senator Jeff Denham. Senator Denham sent out press releases saying he was appalled by early releases due to grants. A grant of parole is not an early release. The penal code specifically states that Parole shall be granted unless there is a public safety reason not to grant it. They forget not only the actual law that controls what Commissioners must do but also that the Commissioner does not make the Decision alone. A civil service Deputy Commissioner is involved in every case and must agree with the Commissioner to grant parole or it is a split vote that goes to the full Board sitting en banc. The Commissioner has no say in who the deputy Commissioner will be or what prison he or she is assigned to each week. That is all manipulated by the Executive Officer who answers to the Governor and /or CDCR. When the Governor and legislature reorganized the Department of Corrections effective July, 2005, they destroyed any independence of the Board of Parole Hearings. The Board was no longer free-standing but was stuffed into the newly named California Department of Corrections and Rehabilitation (CDCR). The Board itself has no control over the hiring of the civil service staff. The legal counsel will tell you they work for CDCR and the Executive Officer is appointed by the Governor, not the Board. He, like the Board, is part of CDCR. Although he is not appointed by the Board the role of the administrator should still be to take direction from the Board he or she serves, not to dictate what is done. This is because the Executive Officer is not a member of the Board. That reality was lost in the transition. He acts on direction from somewhere other than the Board, unknown to the Commissioners. Commissioners are assigned to various prisons weeks in advance then at the last minute-without explanation, the Executive Officer tells scheduling to change the schedule and inform the Commissioners of the switch. That is just one example. Add to the reorganization problems the fact that the legal staff considers itself to work for CDCR, apparently not understanding who the client is (the Board) regardless of who pays their salaries (CDCR) and that the legal staff has, in my opinion, absolutely no understanding of the Bagley –Keene Open Meeting Act and you have a recipe for disaster. Regulations are presented for approval by the Board when the Board has not considered or voted on whether regulations are needed. Although there is an item on each agenda for the legal report and the Executive Officer report those have at times consisted of announcing the number of cases in the backlog for the legal staff and introducing the new deputy commissioners by the Executive Officer. Never, during my time on the Board, did either present any report of substance. The Board members are never told how the number in the backlog is calculated and there is no acknowledgement of cases that are on appeal or problems that come up in panel decisions except in illegal closed sessions allegedly to consider litigation. However, the Bagley- Keene Act is very clear that to be considered under this litigation exception there must be "...an adjudicatory proceeding before a court, administrative body, hearing officer or arbitrator. Litigation is considered to be pending if, {1) it has been initiated formally (e.g. a complaint, claim or petition has been filed) or (2) based on existing facts and circumstances and on the advice of its legal counsel, the state body believes

there is significant exposure to litigation against it, or it is meeting to decide whether a closed session is authorized because of significant exposure to litigation or (3) based on existing facts and circumstances the state body has decided or is deciding whether to initiate legislation. (Bagley –Keene Act section 11126). Further, a memo must be sent to the Board members by the staff and after the litigation is resolved that memo becomes a publicly accessible document. Under the Act, "the agency's legal counsel must submit a memorandum which complies with the requirements of Section 11126(e)(2)(C)(ii) prior to the closed session. This document is confidential until the pending litigation has been finally adjudicated or otherwise settled. There was never any discussion of the Board budget nor was a budget ever approved while I was on the Board. I was told by the Executive Officer in December that "the Board is working on the budget" apparently meaning his civil service staff. Also in December I was told by him that the names of three potential deputy commissioners (civil service employees) were run through the Governor's office prior to any hiring decision being made. I am not mentioning their names out of respect for the three individuals involved. Two were hired and one was not. Why is the Governor's office involved in civil service hiring outside his office? The scheduling of the Commissioners at the various institutions is a process without input from the individuals involved and appears to me to benefit certain Commissioners while punishing others. In a semi-mutiny all the Board members agreed that the scheduling needed to be addressed along with some other housekeeping issues. This was presented to the Board Chair following a closed session in December. He tried to say the issues could not be discussed because of the Bagley-Keene Act. This made it clear to me that he had, just like the legal staff, no understanding of the Act or its purpose. Needless to say the scheduling was not improved. I was told I could not be scheduled at the prisons near my home because it was not fair to the Commissioners who lived far away from prisons. Repeatedly I was told that everyone had to travel three to four hours. Other Commissioners were, however, routinely scheduled at prisons near their homes. Many times hearings had to be canceled because of disease at the institutions. These diseases included norovirus, tuberculosis, chicken pox and the flu. I am not the only Commissioner to have contracted the flu and norovirus. I have canceled hearings of prisoners who were vomiting in the holding cells while waiting to have their hearings and taken flak for the postponements. At one facility the Commissioner was told by CDCR staff that even though six of the inmates were in quarantine the hearings should go forward and the Commissioner and Deputy Commissioner could wear masks. The Commissioner and Deputy Commissioner refused to hold the hearings under those circumstances. Clearly if the inmate is too ill to stand up there are due process considerations being violated. Another problem related to this is that under Penal Code section 5080 the Board can ask CDCR to move a prisoner because of health reasons. I had a case where the inmate absolutely needed to be moved to a facility where he could have mental health treatment and medical intervention. I cited this section in the postponement of his hearing. Under that code section CDCR must report to BPH within 30 days why he cannot be moved for the medical treatment or move him. In this particular case he was not moved and did not receive the medical attention and CDCR gave no reason. The Commissioner who followed me ignored these serious considerations and denied the parole for 5 years without addressing the medical issues. At an open-to- the-public training session in December, I asked our legal staff about the application of this code section. The reply from the attorney training us was that she was still getting up to speed and would get back to me. She never did. In that same training we were repeatedly told "the Board wants it done this way" or the Board wants you to do this". I finally raised the point that we **were** the Board and we had given no such direction and I questioned who had. There was no answer. The Chair, however, did go to two other Commissioners (both women) and tell them to please let me know to stop asking questions in open session. I find it incredible first, that he would say that and second, that he could not he could not talk to me himself. All the Commissioners have many similar stories about problems with CDCR but problems with CDCR are never addressed at the Board or at the Senate Rules Committee. The Commissioners have become merely hearing officers. At most state Boards the trial level is conducted by administrative law judges and/or hearing officers and appeals are taken by the Board itself. At the BPH the Commissioners are the hearing officers and while I was on the Board there was no appeals process. It had been removed following some court action indicating it was a problem because no appeal was ever granted. I understand the appeals process is being reinstituted. How do you do that after a court has told you to stop? This implementation of the appeals process was not done at the behest of the Board. The Board never discussed it nor voted on it. The agenda is put together by staff but the Board members are never asked if they have items for the agenda. Items on the agenda include cases where there was a split decision between the Deputy Commissioner and the Commissioner and referrals of non murder cases from the Governor for en banc review of a panel decision. These are the only Board meetings I have ever been to where no one on the Board says anything except the Chair who is running the meeting. Board business is rarely ever addressed by the members of the Board. The problem of untimely psychological evaluations was to end when the Board took over responsibility from CDCR for preparation of the reports. It has not changed. At some institutions it appears the union of psychologists has instigated a work slow down or stoppage by not preparing the reports timely. This causes legitimate reasons for inmates to request postponements and Commissioners are told by their legal staff to do the hearings anyway. Add to all of this the track record of CDCR in every other area. Across the Board headline after headline shows it is the same response as stated in a report from the State Bureau of Audits in follow-up to an audit done in 2005 to see if there had been any changes. In the March 27, 2007 letter from state auditor Elaine Howle to the Governor and legislative leaders it was stated that there was still a lack of validity in

the projections of the prison population. This report, titled "Department of Corrections: It needs to better ensure against conflicts of interest and to improve its inmate population projections (2005-105)" was also copied to every member of the legislature. It seems that nearly every week we in Sacramento read about CDCR not cooperating with a court or a special master related to conditions at the prisons whether it is health, overcrowding or some other area. I believe it is time to look at how badly CDCR has compromised the Parole process as well. Let me be perfectly clear. I understand the need for public safety. It is paramount. I say that from the shoes of the victim's next of kin. My father and stepmother were murdered and I have worked for many years in the state where that occurred to ensure due process for victims and their families. I also believe that while protecting due process for victims we cannot throw out due process for the inmates. As an attorney, I understand the significance of due process and believe that it is the very foundation of our way of life in this country. Due process should not be tossed aside because there is a backlog of hearings. The Governor should appoint the twelfth member of the Board- this was not done the entire time I was on the Board. Prior Commissioners should be recruited to come back for a limited period to take care of the backlog, but hearings should not be crammed down the throats of inmates who are ill, have not had an opportunity to appeal a serious discipline accusation or who have a habeas case at the appellate level or need time to meet with counsel. Postponements and continuances should not be allowed for the purpose of choosing a specific Commissioner or manipulating the process but legitimate reasons should not be ignored. I would be fine with a law that stated convicted murderers shall never be released from prison. But that is not the law we have. The law states that when these life inmates come up for parole they are to be paroled unless it would be a public safety problem. The burden is on the state to show there is a public safety issue. Either follow this or change the law. The legal staff should be trained in the Bagley-Keene Act and should be responsive to questions from Commissioners and cite authority for their opinions, all the while understanding the Board is their client, not CDCR. CDCR should also understand that the Board is the client. The legal staff should also understand that they merely advise the Board and the Board makes the decisions. But most important, for the Board to actually function, there must be openness about who is doing what and at whose direction and if that cannot occur under the present structure the Board should be removed from CDCR and allowed to hire its own Executive Officer and legal staff.

Perata Calls for Greater Examination of Parole Board Procedures, Questions
Administration's Commitment to Rehabilitating Prisoners
*Wednesday, June 13, 2007*

FOR IMMEDIATE RELEASE:                                                            Contact:
Alicia Trost
(916) 651-4188

(SACRAMENTO) – The forced resignation of a member of the state Board of Parole Hearings
raises questions about the Board's independence and whether the Governor is committed to
rehabilitation programs and giving deserving prison inmates a fair chance to earn parole,
Senate President Pro Tem Don Perata (D-Oakland) said Wednesday.

In a letter to the state Senate, Board Commissioner Bilenda Harris-Ritter said she was
instructed by a Governor's deputy appointment's secretary to resign earlier this year. The
request came as a vocal victims' right group highlighted her votes in favor of granting parole.

"It's troubling, to say the least, that a member of the Parole Board is telling us she quit the
board at the request of the administration," Perata said. "The Board is supposed to be
independent, and current law gives the Governor authority to overturn its decisions.

"Stacking the Board with members who oppose releasing prisoners under almost any
circumstance undercuts state rehabilitation efforts, adds to the prison system's overcrowding
and allows the Governor to sidestep this critical issue without taking any political heat."

Perata put over John Monday, the Parole Board's executive officer, to a later hearing pending
more information on parole revocations. Monday appeared at Wednesday's Rules hearing and
must be confirmed by the Senate by the end of August to remain on the job.

The Rules Committee approved Parole Board appointees Janice Eng and Ed Martinez on a 4-0
vote.

# # #

Please share this with other Lifers. Harris-Ritter's letter is a significant
development and may bring about some much-needed changes. Lifers may wish
to have their family look on the web for Don Perata's website for a copy of this
release. They may also wish to look at the Doris Tate website where the
Commissioners' grants are tallied and criticized.
CMontgomery

# EXHIBIT 7

Original

# S151035

A116379  First Appellate District No.

Cover Page:
Petition for Review
To Exhaust State Remedies

In The Supreme Court of the

State of California

**SUPREME COURT**
**FILED**

MAR 1 9 2007

Frederick K. Ohlrich Clerk

DEPUTY

Derreck
Sunderland,
    Petitioner

v.

Kathy Mendoza-
Powers,
    Respondent

RECEIVED

MAR 1 9 2007

CLERK SUPREME COURT

Petition for Review to Exhaust State Remedies

After Decision by the Court of Appeals
First Appellate District Division  Four

Derreck , Sunderland
C-84327 550-2-40U
P.O. Box 9
Avenal Ca. 93204

## Table of Contents

Petition for Review to Exhaust State Remedies                    1

Reasons Review Should Be Granted                                 2

Statement of Case                                                2

Statement of Facts                                             2-3

Arguments/Issues Presented for Review                            3

    Does the Board of Parole Hearings' failure to
    conduct a timely subsequent parole hearing
    deprive petitioner of his Fourteenth Amendment
    Due Process Right to the benefits of his plea
    bargain?                                             3

Conclusion                                                       4

Verification                                                     4

Certificate of Compliance                                        5

Proof of Service                                                 6

A116379 First Appellate District No.

In The Supreme Court of the

State of California

Derreck
Sunderland,
    Petitioner

v.

Kathy Mendoza-
Powers
    Respondent


## Petition for Review to Exhaust State Remedies

To the Honorable Chief Justice Georage and to the Honorable
Associate Justices of the Supreme Court of the State of
California;

Petitioner, Sunderland, proceeding pro per, hereby petitions
for review solely to exhaust state remedies of the
unpublished decision of the Court of Appeal, First
District, Division Four    filed on March 8, 2007 affirming the
Superior Court decision filed on 11-7-2006. A copy of the
Appellate Court decision is attached as Exhibit I. A copy
of the Superior Court decision is attached as Exhibit II.

## Reasons Review Should Be Granted

This petition presents no grounds for review under CRC Rule 28(b) and the petition is filed solely to exhaust state remedies for federal habeas corpus purposes.

## Statement of Case

1. On 8-28-06, petitioner submitted a petition for writ of habeas corpus, Writ No. 5416 to the San Francisco Superior Court, claiming that the Board of Parole Hearings' (Hereafter Board's) failure to conduct a timely subsequent parole hearing deprived him of his Fourteenth Amendment Right to the benefits of his plea bargain. On 11-07-06, the Superior Court denied the petition. (Exhibit II).

2. On 01-07-2007, , petitioner submitted his claim to the California Court of Appeals for the First District, Division Four  . On 03-08-2007, the Court of Appeals denied the petition (Exhibit I).

3. On 03-14-2007 , six   days after receiving his court of appeals' summary denial, petitioner submitted this petition for review.

## Statement of Facts

1. On 10-26-83, petitioner entered a negotiated plea to second degree murder with use of a weapon. On 4-06-84, petitioner was sentenced to a term of 16 years to life.

2. On 10-23-91, petitioner appeared before the Board for his initial parole hearing. Parole was deferred for three years.

3. On 7-09-03, petitioner appeared before the Board for his sixth parole hearing (fifth subsequent hearing). Parole was deferred for three years, and his seventh hearing was scheduled for July 2006.

4. In July 2006, three years after the last three-year deferral, the Board did not conduct a subsequent parole hearing.

5. In August 2006, petitioner asked his caseworker, CCI Messer, about his subsequent hearing. CCI Messer informed petitioner that the subsequent hearing was indefinitely postponed because of a backlog of subsequent parole hearings.

6. On 8/ 28/06, petitioner submitted Writ No. 5416. Shortly thereafter, petitioner's parole hearing was scheduled for 10/3/06. On 10/3/06, three years and tree months after the three-year deferral of July 2003, the Board informed petitioner that the parole hearing would be postponed for six months because an up-to-date psychological evaluation had not yet been prepared.

## Arguments/Issues Presented for Review

Does the Board of Parole Hearings' failure to conduct a timely subsequent parole hearing deprive petitioner of his Fourteenth Amendment Due Process Right to the benefits of his plea bargain?

## Conclusion

Petitioner respectfully submits this petition for the
purpose of exhausting state remedies so that federal review
of the issues presented may be sought.

## Verification

I have read the attached Petition for Review to Exhaust
State Remedies and know of its contents. I am a party to
this action. The matters in this document are true to my
knowledge except as those matters that are stated on
information or belief; as to those matters I believe them
to be true for and on their behalf, and I make this
verification for that reason. I declare under penalty of
perjury that the forgoing is true and correct. Executed
this day _March 19, 2007_ at Avenal State Prison, Kings
County California.

Dated: _3-19-07_

Derreck Sunderland
Petitioner Pro Per

(4)

Sunderland v. Kathy Mendoza-Powers, et, al

Supreme Court of California

## Certificate of Compliance

I certify that the attached Petition for Review contains
687 words, excluding this certificate, the attached Proof
of services, and the Table of Contents.

Respectfully Submitted,

Dated: **3-14-07**

Derreck Sunderland
Petitioner Pro Per

(c)