1. Derreck Sunderland
2. C-84327 550-2-40U
   P.O. Box 9,
3. Avenal, CA 93204



6.    IN THE UNITED STATES DISTRICT COURT FOR THE
7.         NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Derreck Sunderland,<br>    Petitioner, Pro Per<br><br><br><br>v.<br><br><br><br>James D. Hartley,<br>    Warden, Respondent | Case No. C-07-05345 CRB (PR)<br><br>OPPOSITION TO MOTION TO<br>DISMISS PETITION<br><br><br><br>Judge: The Honorable<br>    Charles R. Breyer |

19.    Petitioner, Derreck Sunderland, opposes Respondent's Motion

20. to dismiss the petition for writ of habeas corpus and denies that

21. he is in lawful custody of the California Department of

22. Corrections and Rehabilitation. The petition is not moot; the

23. petition is not successive; and the petition does concern a

24. clearly established federal question.

INTRODUCTION

The following discussion will address the Respondent's allegations. First, the petition is not successive because petitioner could not have raised the claim at an earlier time. Second, the petition does raise a federal question concerning petitioner's reasonable understanding of the benefits of his plea bargain. Third, the question raised in this petition is not being resolved in In re Rutherford, Super. Ct. Marin County, 2004, SC135399A. Finally, the petition is not moot because petitioner has not received a hearing that *comports with due process*.

STATEMENT OF RELEVANT FACTS

1) On October, 26, 1983, petitioner entered a plea bargain. His attorney stated that he had "advised him of the law as it relates to the facts of his case". (Petn. Ex 1, p.3, RT 32-24-25).

2) Prior to the time for Sentencing, petitioner tried to withdraw his plea. On January 13, 1984, a Motion to Withdraw Plea was heard. The judge who presided over the plea proceedings stating, "I thought Mr. Dressler [petitioner's attorney] worked out a very excellent disposition..." (Ex. I, p.1, RT 4:18-19; Motion to Withdraw Plea). Petitioner swore under oath, "I didn't realize what I was looking at". (Ex. I, p.2, RT 8:4). The Motion to Withdraw Plea was denied.

3) On October, 23, 1991, petitioner appeared before the Board of Prison Terms for his Initial Parole Consideration Hearing. Parole was denied.

4) On July 9, 2003, petitioner appeared before the Board for his sixth parole hearing. His attorney suggested that the panel order a new psychological evaluation.(Ex II, p.1, BPT RT 25:4-6). Parole was denied for three years

5) On July 9, 2006, three years after the three-year denial at the sixth parole hearing, the Board did not conduct the seventh hearing.

6) In late August, 2006, petitioner asked about the hearing and was informed that the hearing would be postponed indefinitely.

7) On October 3, 2006, petitioner went to his seventh hearing. Commissioner Harris-Ritter postponed the hearing, claiming the need for an up-to-date psychological evaluation. (Petn. Ex [6] ). Petitioner objected to the postponement.

8) On April 9, 2007, 45 months after the July 2003 hearing, petitioner went for an up-to-date psychological evaluation.

9) On May 23, 2007, petitioner appeared before the Board for his seventh hearing. The commissioner read the statement of facts into the record, stating,

> "The victim threw him [petitioner] against the wall and started getting on top of him". (Ex. III, p.1-2, BPH RT 28:24-25, 29:1).

The commissioner accepted petitioner's testimony

> "…When he grabbed me…when we started
> struggling, he had gotten on top of me and he
> was choking me. That's when I pulled out my
> knife and I just stabbed him". (**Ex. III, p.3,**
> **BPH RT 36:17-21).**

The panel denied parole, stating,

> "The victim was sat upon by [petitioner] and
> stabbed…" (**Ex. III,p.3, BPH RT 124:13-14).**

**THE PETITION IS NOT SUCCESSIVE**

In regards to second or successive petitions, the Ninth
Circuit Court of Appeals has held:

> "That a prisoner has previously filed a federal
> habeas petition does not necessarily render a
> subsequent petition 'second or successive.'"(*Hill v.*
> *State of Alaska*, 297 F.3d 895, 898; (9th Cir.2002)
> citing *In re Cain*, 137 F.3d 234 235, (5th
> Cir.1998)(Per Curium).

> "…a prisoner's first petition challenging the
> calculation of release date should not be deemed
> successive if the prisoner did not have an
> opportunity to challenge the state's conduct in a
> prior petition" (*Hill v. State of Alaska*,. citing
> *Crouch v. Norris* 251 F.3d 720, 725 (8th
> Cir.2001)(Also see *Walker v. Roth*, 133 F.3d. 454, 455
> (7th Cir.1997)(Per Curium).

1.
2.
3.
4.
5.
6.

> "It also bears noting that the Supreme Court has
> declined to read § 2244 to preclude prisoners from
> bringing habeas claims that could not have been
> brought in earlier petitions  See Slack v. McDaniel,
> 529 U.S. 473, 120 S. Ct. 1593" (*Hill v. State of
> Alaska* 898)

7.
8.
9.
10.
11.
12.
13.
14.
15.
16.
17.
18.

The claim raised in this petition is distinct from the claim
raised in *Sunderland v. Mendoza-Powers* 1:06-cv-00999 LJO TAG and
could not have been raised at the time of filing *Sunderland v.
Mendoza-Powers*. *Sunderland v. Mendoza-Powers* involves a challenge
to the application of some evidence beyond the minimum elements of
the stipulated offense to require petitioner to serve a non-
bargained-for "more lengthy period of incarceration". (Cal. Pen.
Code § 3041(b)). That claim (hereafter the *some-evidence
challenge*) requires resolution of an ambiguous term of the
agreement (i.e. "the date of his initial parole" (Petn. Ex.1 p.5,
RT 33:9)).

19.
20.
21.
22.
23.
24.
25.

The *some-evidence challenge* was filed on August 1, 2006, at
which time petitioner was still waiting and hoping to attend his
seventh     hearing. When, in late August, 2006, petitioner
realized that the seventh    hearing would not be held any time
soon, he filed the claim now before this court in the State
Superior Court. (hereafter the *timely-hearing violation*).

26.
27.
28.

Petitioner could not have raised the *timely-hearing violation*
at the time that he raised the *some-evidence challenge* because he

was required to first attempt to resolve the issue in the state courts. If he had waited to file the *some-evidence challenge* until after he had exhausted state court remedies on the *timely-hearing violation*, then he would have risked an untimely procedural default on the *some-evidence challenge*.

If a plea bargain is induce by various benefits, then the plea bargain can be violated in various ways. "[I]f the expression 'second or successive' were interpreted too liberally, it would 'all but foreclose challenges to the constitutionally of the execution of [ ] sentences'". (*Hill v. State of Alaska*, 899; quoting *Crouch v. Norris*, 251 F.3d 720, 722.). Likewise, it would allow the state to violate the plea bargain by the manner in which it executes the agreed-upon sentence.

Accordingly, since the district court has never addressed the *timely-hearing violation*, and since this issue could not have been raised at an earlier time, the petition is not successive, and petitioner was not obligated to secure [the court of appeals] permission prior to filing his habeas petition in the district court". (*Hill v State of Alaska*, 899). Therefore, Respondent's Motion to dismiss the habeas petition should be denied.

Since petitioner entered his plea bargain in San Francisco County, within the Northern District of California, this court retains jurisdiction over his claim. When, in October 2007, petitioner filed the *timely-hearing violation* in the Northern

1.  District of California, the *some-evidence challenge* had been filed
2.  in the Eastern District of California for over 14 months without
3.  an order for response. As a result, petitioner began questioning
4.  whether he had erroneously filed *the some-evidence challenge* in
5.  the Eastern District. Since then, a response has been ordered on
6.  
7.  the *some-evidence challenge*, but the claim has not yet been
8.  adjudicated on the merits.
9.  
10. THE PETITION RAISES A FEDERAL QUESTION

11. The question is not whether the State is violating state law.
12. That is not in dispute. The question is:  Does the State's failure
13. to follow state law in the execution of an agreed-upon sentence
14. violate the agreement? This is a federal question. *Santobello v.*
15. *New York*, 404 U.S. 257 (1971)?

17. Suppose a hypothetical defendant is offered a plea bargain
18. whereby the State agrees to a sentence of 16 years to life. The
19. defendant's attorney researches the law and learns that the
20. release date *shall normally* be set at the Initial Parole
21. Consideration Hearing, and in those abnormal cases when the
22. release date is not *normally* set, *timely* subsequent hearings shall
23. 
24. be held according to the law. The attorney concludes from his
25. research that as a result of the plea bargain, the hearings will
26. be held sooner rather than later. Thus, the State's offer seems to
27. be a *very excellent* disposition. He then advises his client,
28.

1. saying, "The offer is a good deal". Upon this advice, the

2. defendant accepts the State's offer and is sentenced to 16 years

3. to life in accordance with the agreement. However, during the

4. 

5. execution of his sentence, the State does not proceed according to

6. the law, thus, depriving the defendant of the "good deal".

7. Is such a defendant not entitled to federal relief under

8. *Santobello v. New York*? On the one hand, the State only agreed to

9. the sentence. The State never promised to follow state law in the

10. execution of that sentence. On the other hand, since the State did

11. not proceed according to the law, then, contrary to the

12. defendant's reasonable understanding, the plea bargain was not

13. such a "good deal".

14. 

15. Petitioner entered the plea bargain upon the advice of his

16. counsel. But would counsel have advised Petitioner to enter the

17. plea bargain if he had known that the State would not follow state

18. law in the execution of the agreed-upon sentence?

19. Prior to Sentencing, petitioner tried to withdraw his plea,

20. asserting, "I didn't realize what I was looking at". (Ex. I, p.2

21. RT 8:4). The judge denied the Motion to Withdraw Plea because he

22. thought that the disposition was "very excellent". (Ex. I, p.1, RT

23. 

24. 4:19). But would the judge have denied the Motion to Withdraw Plea

25. if he had known that the State would not follow state law in the

26. execution of the agreed-upon sentence?

27. 

28. 

8

1. | If the State is allowed to violate state law in the execution

2. | of an agreed-upon sentence, then such violation undercuts the

3. | basis for the agreement and renders the benefits ilusory, thus

4. | violating due process. (U.S. v. Franco-Lopez, 312 F.3d 984, 991;

5. | (9th Cir.2002), citing U.S. v. Dillon, 307 F.2d 445. (9th

6. | Cir.1962). This is a federal question. The question is:  Does the

7. | State's failure to follow state law in the execution of an agreed-

8. | upon sentence violate the agreement? That is the question the

9. | Respondent did not answer.

10.

11.

12. | IN RE RUTHERFORD IS NOT RESOLVING THE ISSUE PRESENTED IN THIS

13. | PETITION

14. | In re Rutherford, SC135399A, is a habeas corpus petition that

15. | was filed in the Marin County Superior Court in 2004 where it is

16. | still pending. It is an attempt to compel   the Board to proceed in

17. | accordance with state law. Whether or not the Rutherford Case is

18. | successful in achieving its goal is not the issue in this habeas

19. | corpus. So, assuming that the Rutherford case does eventually

20. | succeed in compelling the Board to proceed in accordance with

21. | state law, then petitioner will eventually receive a fair hearing,

22. | but it will be *later rather than sooner*.

23.

24.

25. | THE CLAIM IS NOT MOOT

26. | The Respondent asserts that because petitioner received a

27. | hearing on May 23, 2007, the claim is moot. (Ans. P.4, lines 14-

28.

9

16). However, the assertion begs several questions. How can an untimely hearing take the place of a timely hearing? More importantly, was the May 2007 hearing a fair hearing?

Can claim become unmoot?

The May 2007 hearing (the seventh hearing) is being challenged in the state court as arbitrary because the reasons for the denial have no evidentiary basis in fact. For example, during the hearing but before the decision, the commissioner read the Statement of Facts into the record. The commissioner acknowledged that;

> The victim threw him [petitioner] against the wall and started getting on top of him. (Ex. III, p.1⁻2, BPH RT 28:24-25, 29:1).

The commissioner accepted petitioner's testimony;

> "…When he grabbed me…when we started struggling, he had gotten on top; of me and he was choking me. That's when I pulled out my knife and I just stabbed him". (Ex. III, p.3, BPH RT 36:17-21).

The panel denied parole, stating,

> "The victim was sat upon by [petitioner] and stabbed…" (Ex. III, p.3, BPH RT 124:13-14).

The accepted Statement of Facts has always indicated that the victim was on top of petitioner when the stabbing began. That is

1.  until the May 2007 decision to deny parole when the panel stated,

2.  "The victim was sat upon by [petitioner] and stabbed..."

3.

4.      The difference between the victim being on top of petitioner

5.  and petitioner being on top of the victim when the stabbing began

6.  is significant in that the latter scenario indicates a greater

7.  degree of malicious intent by suggesting that petitioner had

8.  overpowered the victim before he stabbed him. That is not true.

9.  Therefore, the May 2007 decision to deny parole is based at least

10. in part on a false premise and should be reversed on this ground

11. alone.[1]

12.

13.     The Respondent claims that petitioner "has received the only

14. effective relief that he can be granted-a new parole hearing that

15. comports with due process" (Ans. P.4, lines 16-17). But what if

16. the May 2007 hearing is reversed for violating due process? Is

17. petitioner then only entitled to another, even *more untimely*

18. hearing by the same administrative agency (The Board) that has

19. "operated under a sub rose policy that all murderers be found

20. unsuitable for parole? (Coleman v. BPT cv-96-0783 LKK PAN P.

21. (Petn. Ex. 8, p.3, lines 1-4; Also see In re Criscione No. 71614,

22. Petn. Ex. 9). And what if all future subsequent hearings are

23.

24. eventually vacated, one by one, for violating due process? When

25. will petitioner receive the "very excellent disposition" (Ex. I

26.

27. [1] Petitioner is challenging the May 2007 denial as arbitrary for
    other, more general reasons.

28.

11

1. RT 4:19) that he bargained for? When will petitioner at least
2. receive a hearing by a panel that recognizes that the various
3. Penal Code Sections were designed to function in harmony with one
4. another, and that unless release dates are normally set (Cal. Pen.
5. Code § 3041(a)), the backlog of subsequent hearings will continue
6. to grow, depriving parole applicants such as petitioner of the
7. reasonable understanding that the agreed-upon sentences will be
8. executed according to the "law as it relates to the facts of [the]
9. case"? (Petn. Ex 1, p.3, RT 32-24-25).And why should petitioner
10. not be allowed to revive his *timely* Motion to Withdraw Plea? These
11. are some of the questions that the Respondent should be required
12. to answer.
13.
14. For all the aforementioned reasons, the Motion to Dismiss the
15. Petition for Writ of Habeas Corpus should be denied.
16. Petitioner swares under the Penalty of perjury that the facts in this document
17. are true as he believes them to be.

18.
19. Respectfully submitted,
20.
21.     Derreck Sunderland,     Dated: 5-6-08
22.     Petitioner Pro Per
23.
24.
25.
26.
27.
28.

Derreck Sunderland
C-84327   550-2-40U
P.O. Box 9
Avenal, CA 93204

### THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

Derreck Sunderland,
    Petitioner Pro per

v.

James D. Hartley,
    Warden, Respondent

Case No. C-07-05345 CRB PR

Traverse to Respondent's
Answer to petition

Judge: The Honorable
Charles R. Breyer

    Petitioner submits this traverse and reasserts all of the allegations
contained in the original petition for writ of habeas corpus.

    Petitioner denies that he is in lawful custody of the California Department
of Corrections and Rehabilitation. Petitioner denies that the petition is moot,
a successive petition or that the petition does not involve questions of federal
law.

    Petitioner alleged that the Board's failure to conduct a timely subsequent
hearing was the result of a backlog of overdue hearings which is the result of
an illegal policy to normally deny parole. (Petn. p. 12, lines 19-28; p. 13,
lines 22-26). The Respondent did not contest these allegations.

13

Petitioner submitted Coleman v. BPT Civ-S-96-0783 LKK PAN P. (Ex 8) and In re
Criscione, Santa Clara Superior Court, No. 71614 (Ex 9). Petitioner claimed the
information in these cases provides evidence that the Board's policy created the
backlog of overdue hearings which is now depriving petitioner of a timely hearing.
Petitioner further contends that the uncontested information in these two cases
provides clear and convincing evidence that petitioner was telling the truth in
1984 when he swore under oath, "I didn't realize what I was looking at." (Ex.I
p. 2, RT 8:4).

Petitioner asserted and reasserts that the law sets forth the terms of the
plea agreement, (Petn. p. 14, lines 21-28; p. 15, lines 1-2). Petitioner asserted
and reasserts that the law was violated during the execution of his sentence.
The Respondent did not deny these allegations.

In conclusion, if the law sets forth the terms of the agreement, and the law
has been violated, then the plea agreement has been violated.

For the foregoing reasons, petitioner respectfully requests that this Court
grant the writ or order the Respondent to answer the questions raised in the
petition and this traverse.

Respectfully submitted,

Derreck Sunderland,
petitioner Pro Per

Dated: 5-6-08

14

## TABLE OF EXHIBITS

Exhibit I--Excerpts from the MOtion to Withdraw Plea, January 13, 1984

Exhibit II--Excerpts from the Sixth hearing, July 9, 2003

Exhibit III--Excerpts from the seventh hearing,  May 23, 2007.

Petn. Ex 1, Plea agreement, October 26, 1983;

Petn. Ex 8 Coleman v. BPT CV-96-0783  (2005)

Petn. 9 In re Criscione, Santa Clara Superior Court, No. 71614 (2007)

# EXHIBIT

# I

EXHIBIT V

4

1    acceptance of your plea at this time is not binding on the Court.
2    If the Court withdraws its approval at the time of sentencing
3    you will be allowed to take back your guilty plea and enter a
4    plea of not guilty if you wish to do so."

5        It was never accepted.  That is the day of acceptance, four
6    weeks from that date, and it was not accepted.  That's the way
7    the formation of the contract is made.  There is no acceptance.
8        MR. SWEETERS:  We submit the matter.
9        THE COURT:  You are straining it, Mr. Manzella, you are
10   straining it.
11       MR. MANZELLA:  The only thing, your Honor, is that is what
12   Santabella said -- It is a contract -- and when you look at the
13   section itself it says that it should be construed liberally.
14   That means if the defendant wants to get off and have it
15   unaccepted he should be allowed to restore it under Dellas to
16   the previous charges.
17       THE COURT:  I heard the preliminary hearing evidence in this
18   case and it was very strong, and personally I thought Mr. Dressler
19   worked out a very excellent disposition of this matter on behalf
20   of Mr. Sunderland.  He could well end up with a more serious
21   charge being proved against him if it went to trial.  I see no
22   reason to set aside this plea.

23       You have presented no evidence other than your allegation
24   here that the matter wasn't accepted by Judge Campilongo, and
25   I cannot buy that argument.

26       The motion to withdraw the plea --

27       MR. MANZELLA:  Okay.  If your Honor is not ready to accept it,
28   the other thing is the defendant has some reasoning why there was

EXHIBIT VIII

1    THE COURT: That's sustained.

2    MR. MANZELLA: Q. And did you know what was being done to you

3    at the end of the preliminary hearing?

4    A    No. I didn't realize what I was looking at. He set me off.

5    MR. MANZELLA:  I don't have anything further.

6                        CROSS-EXAMINATION

7    BY MR. SWEETERS:

8    Q    Mr. Sunderland, do you remember that your preliminary hearing

9    was scheduled for October 26; is that correct?

10   A    Yes.

11   Q    And you were sitting in court, were you not, when evidence was

12   presented at that preliminary hearing; is that right?

13   A    Yes, but --

14   Q    Is that right?                    A    Yes.

15   Q    And when the Coroner testified you knew it was the Coroner,

16   didn't you?                            A    I didn't know who

17   it was.

18   MR. MANZELLA:  I don't see what the relevancy of this is,

19   what went down at the preliminary hearing.  The question is

20   whether or not it was an intelligent waiver and understanding.

21   THE COURT:  I think that's what he is leading to.  He is

22   laying a foundation.  Your objection is overruled.

23   MR. SWEETERS: Q  Mr. Sunderland, was the preliminary hearing

24   conducted in the morning or the afternoon?

25   A    I think it was in the morning.

26   Q    And you weren't under the influence of any alcohol at that

27   time, were you?                        A    No.

28   Q    You hadn't been taking any medication, had you?

# EXHIBIT

# II

25

1    did note the psych report is four years old.
2         **DEPUTY COMMISSIONER BACHLOR:**  Yes, it
3    is.
4         **ATTORNEY CHRISTENSEN:**  So I do hope that
5    you will, at the conclusion, request a more
6    recent, updated report --
7         **DEPUTY COMMISSIONER BACHLOR:**  Okay.
8         **ATTORNEY CHRISTENSEN:**  -- completed on
9    this inmate.
10        **DEPUTY COMMISSIONER BACHLOR:**  All right,
11   that's fair.  All right, let's go to your
12   parole plans.  According to your Board report,
13   if parole is granted, you wanted to self-parole
14   to Las Vegas where your brother, Larry
15   Sunderland, resides?
16        **INMATE SUNDERLAND:**  Well, I understand
17   that that's going to be difficult to do that,
18   you know, immediately.  I've been -- we're
19   trying to work on an interstate transfer to
20   Nevada where I'll be in a Nevada prison.  That
21   hasn't -- I haven't gone very far on that.  My
22   counselors won't help me out with that.  If I
23   parole to San Francisco, I wrote Delancey
24   Street and I got a letter back and I gave it to
25   my counselor, Ms. Orozco.  I don't know if it's
26   there.  I haven't gotten a letter back.  In
27   this pamphlet, it really talks about the

# EXHIBIT

# III

28

```
1         misdemeanor charges on 6/4/83. The
2         murder investigation that was being
3         conducted by the San Francisco Police
4         Department was focused on him. SFPD
5         inspectors went to the county jail, and
6         the defendant voluntarily acknowledged
7         that he stabbed the victim. After being
8         read his Miranda rights, Mr. Sunderland
9         said he met with the victim and the
10        victim asked him if he had a place to
11        stay. They rented a motel room. At this
12        point the -- at this point the victim
13        wanted the defendant to engage in
14        homosexual acts. The defendant said he
15        became nervous. Both men went downstairs
16        to a store, where the victim bought the
17        defendant a sandwich and a beer, and they
18        returned to the room and went to bed.
19        The defendant and the -- said that the --
20        when he thought that the victim was
21        asleep, he tried to get the victim's
22        wallet. The victim got up and started
23        grabbing the defendant, and pulled him
24        back into the bed. The victim threw up
25        -- threw him against the wall and started
```

29

```
 1              getting on top of him.  The defendant
 2              said that he stabbed the victim with a
 3              pocketknife that he carries.  Defendant
 4              admitted to the police that the shirt
 5              found in the -- at the scene belonged to
 6              him, described the inside of the room to
 7              the satisfaction of the homicide
 8              inspectors, and said that he had been
 9              taking LSD the day of the -- the stabbing
10              took place."
11    Okay.  So that -- now what -- what differences do you
12    have with regard to this -- I assume that part of it has
13    to do with the number of stab wounds, is that --
14              INMATE SUNDERLAND:  Yes.
15              PRESIDING COMMISSIONER PRIZMICH:  Okay.
16              INMATE SUNDERLAND:  There are some more things.
17              PRESIDING COMMISSIONER PRIZMICH:  Okay.  Could
18    you -- could you talk about that a little bit, sir?
19              INMATE SUNDERLAND:  Okay.  Well, they said that
20    it -- that the crime was committed in an especially
21    cruel and callous manner.  Seems to me that implies that
22    I'm trying to torture him.  I really wasn't trying to --
23    to torture him.  I panicked and he -- we -- we struggled
24    for the knife.
25              PRESIDING COMMISSIONER PRIZMICH:  Uh-huh.
```

124

1    left common artery. "There were a total of 25 stab
2    and/or slash wounds to the victim's body. The defendant
3    was arrested on numerous misdemeanor charges on 6/4/83.
4    The murder investigation was being conducted by the San
5    Francisco Police Department, and it was focused on him.
6    San Francisco Police Inspectors went to the county jail,
7    and the defendant voluntarily acknowledged that he
8    stabbed the victim. After being read his Miranda
9    rights, Mr. Sutherland [sic] stated that he met the
10   victim.  The victim asked him if he had a place to stay.
11   They then went upstairs to a motel room, and an argument
12   ensued after Mr. Sutherland -- Sunderland attempted to
13   remove money from the victim, and the victim was sat
14   upon by Mr. Sunderland and stabbed with an approximately
15   three or four inch pocket knife a number of times." We
16   note that there have been -- the prisoner has been
17   involved in previous crimes, in that he served time in
18   Texas for manslaughter of very similar circumstances
19   wherein the victim was stabbed to death there. At the
20   time of this crime the -- Mr. Sunderland was -- had
21   skipped parole and was essentially on the run, living on
22   the streets. So we find that he has a record of
23   assaultive or violent behavior in the past. He has a
24   continuing pattern of violence. He has a history of
25   **D. SUNDERLAND    C-84327   DECISION PAGE 2   5/23/07**

# PROOF OF SERVICE BY MAIL

I THE UNDERSIGNED. CERTIFY THAT I AM OVER THE AGE OF EIGHTEEN (18) YEARS OF AGE. THAT I

CAUSED TO BE SERVED A COPY OF THE FOLLOWING DCOUMENT:

ENTITLED: **Traverse to Answer and Opposition to Motion to Dismiss petition**

       **for Writ of Habeas Corpus**

      BY PLACING THE SAME IN AN ENVELOPE. SEALING IT BEFORE A CORRECTIONAL OFFICER.

AND DEPOSITING IT IN THE | U*NITED STATES MAIL* | AT AVENAL STATE PRISON AND ADDRESSEDIT

TO THE FOLLOWING:

**OFFICE OF THE CLERK, U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**450 GOLDEN GATE AVENUE**
**SAN FRANCISCO, CA 94102**


**Deputy Attorney General**
**Amanda J. Murray**
**455 Golden Gate Avenue, Suite 11000**
**San Francisco, CA 94102-7004**

    EXECUTED ON **May** _____, **6** , 20 **08** ____ AT AVENAL STATE PRISON. AVENAL CALIFORNIA


    I . **Derreck Sunderland** _____ DECLARE UNDER THE PENALTY OF PERJURY UNDER THE  LAW

OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

                                _____
                                  SIGNITURE OF DECLARANT

                          **Derreck Sunderland** _____
                          PRINT NAME OF DECLARANT

                          PRO PER.

Derreck Sunderland
C-84327  SSO-2-404
P.O. Box 9
Avenal, CA 93204

AVENAL STATE PRISON
Confidential

Office of the Clerk
U.S. District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

LEGAL MAIL
MAY 7 2008
AVENAL STATE PRISON
MAILROOM